# In the United States Court of Federal Claims

No. 15-1072C
Filed: June 20, 2019

| | |
|---|---|
| * * * * * * * * * * * * * * *<br>**ST. BERNARD PARISH**<br>**GOVERNMENT,**<br><br>        **Plaintiff,**<br>**v.**<br><br>**UNITED STATES,**<br><br>        **Defendant.**<br>* * * * * * * * * * * * * * * | Motion for Reconsideration; RCFC 59; Standing. |

    **Robert E. Couhig**, Couhig Partners, LLC, New Orleans, LA, for plaintiff. Of counsel were **Jason A. Cavignac** and **Cory S. Grant**, Couhig Partners, LLC, New Orleans, LA, and **William M. McGoey**, St. Bernard Parish Government, New Orleans, LA.

    **Steven C. Hough**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Steven J. Gillingham**, Assistant Director, Commercial Litigation Branch, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Joseph H. Hunt**, Assistant Attorney General, Civil Division, Department of Justice.

# O R D E R

**HORN, J.**

### BACKGROUND

    On April 4, 2019, the court issued an Opinion in the above-captioned case denying defendant's motion to dismiss. See St. Bernard Par. Gov't v. United States, 142 Fed. Cl. 504, 588 (2019). The court's April 4, 2019 Opinion set forth the facts relevant to the above-captioned case, which are incorporated into this Order. See St. Bernard Par. Gov't v. United States, 142 Fed. Cl. at 508-27. Only certain facts from the court's April 4, 2019 Opinion that are relevant to plaintiff's motion for reconsideration will be repeated in this Order.

    On May 2, 2019, defendant's attorney filed a motion for reconsideration of the court's April 4, 2019 Opinion under Rule 59 (2018) of the Rules of the United States Court of Federal Claims (RCFC). RCFC 59(a) permits a party to file a "motion for reconsideration on all or some of the issues," while under RCFC 59(e) a "motion to alter

or amend a judgment must be filed no later than 28 days after the entry of the judgment." See RCFC 59(a), (e). In the above-captioned case, judgment has not been entered, and neither liability nor damages have been established. In the May 2, 2019 motion, defendant argues that this court should reconsider whether plaintiff, St. Bernard Parish Government (St. Bernard Parish), has standing in the above-captioned case. In its earlier motion to dismiss the complaint in this case, defendant argued that a defect in standing cannot be cured after a complaint is filed. St. Bernard Par. Gov't v. United States, 142 Fed. Cl. at 527. In the court's April 4, 2019 Opinion, the court stated that, although the parties disputed whether plaintiff has standing in the above-captioned case, the court found that plaintiff did have standing. See id. at 527, 539. Defendant also argued:

> The problem is not that St. Bernard has agreed to pay any recovery from this action to the Pizanis pursuant to the Joint and Reciprocal Agreement—it is that St. Bernard has not suffered an injury in fact because it had not paid the state court judgment when it filed this action and will not pay the state court judgment under the Joint and Reciprocal Agreement.

Id. As stated in the court's April 4, 2019 Opinion:

> In plaintiff's opposition to defendant's motion to dismiss, plaintiff did not address whether standing must be determined at the time of the original complaint or whether a defect in standing subsequently can be "cured." At the oral argument, however, plaintiff argued that "I have never heard of that [standing] as something that could not be cured even if it was a problem through amendment."

Id. (alteration in original).

In its April 4, 2019 Opinion, however, the court considered defendant's argument as to whether plaintiff has standing in the above-captioned case and stated:

> Regarding defendant's argument that standing "cannot be cured after the inception of the lawsuit," defendant notes that, in Paradise Creations, Inc. v. UV Sales, Inc., which the court notes involved a patent infringement claim, the United States Court of Appeals for the Federal Circuit stated that "a defect in standing cannot be cured after the inception of the lawsuit." See Paradise Creations, Inc. v. UV Sales, Inc., 315 F.3d at 1310. The United States Court of Appeals for the Federal Circuit, however, specifically had stated earlier in the Opinion in Paradise Creations, Inc. v. UV Sales, Inc. that "this court has determined that in order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at the inception of the lawsuit*." Id. at 1309 (emphasis in original) (citing Lans v. Digital Equip. Corp., 252 F.3d 1320, 1328 (Fed. Cir. 2001); Enzo APA & Son, Inc. v. Geapag A.G., 134 F.3d 1090, 1092 (Fed. Cir. 1998); Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1572 (Fed. Cir. 1997); and Gaia Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774,

2

778 (Fed. Cir. 1996), amended on other grounds, 104 F.3d 1296 (Fed. Cir. 1996), withdrawing mandate in part, 104 F.3d 1298 (Fed. Cir.), reh'g denied and suggestion for reh'g en banc declined (Fed. Cir. 1997)). Indeed, regarding its patent jurisdiction, the United States Court of Appeals for the Federal Circuit has indicated that:

> In the area of patent infringement, this court has held that if the original plaintiff lacked Article III initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing, nor by the subsequent purchase of an interest in the patent in suit.

Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198, 1203 (Fed. Cir. 2005) (citations omitted); see also Alps S., LLC v. Ohio Willow Wood Co., 787 F.3d 1379, 1385 (Fed. Cir. 2015) ("The party asserting patent infringement is 'required to have legal title to the patents on the day it filed the complaint and that requirement can not be met retroactively.'" (quoting Abraxis Bioscience, Inc. v. Navinta LLC, 625 F.3d 1359, 1366 (Fed. Cir. 2010), reh'g and reh'g en banc denied, 672 F.3d 1239 (Fed. Cir.), cert. denied, 565 U.S. 825 (2011))), cert. denied, 136 S. Ct. 897 (2016).

In Gaia Technologies, Inc. v. Reconversion Technologies, Inc., which also involved patent and trademark claims, the United States Court of Appeals for the Federal Circuit stated:

> If Gaia [which was the plaintiff in the District Court] can prove that it was the assignee of the Intellectual Property at the time the suit was filed, Gaia has standing to sue for patent infringement under 35 U.S.C. § 281 (1994) as a patentee, see 35 U.S.C. § 100(d) (1994) (noting that "patentee" includes those who are successors in title to the patentee), and for trademark infringement under 15 U.S.C. § 1114 as a registrant, see 15 U.S.C. § 1127 (1994) (noting that "registrant" embraces the legal assigns of the registrant). Absent ownership of the Intellectual Property, Gaia lacked standing to sue on the patent and trademark infringement claims.

Gaia Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d at 777 (capitalization in original). The Federal Circuit further stated:

> "As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually

3

> obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day."

Id. at 780 (quoting Procter & Gamble Co. v. Paragon Trade Brands, Inc., 917 F. Supp. 305, 310 (D. Del. 1995)). The Federal Circuit, therefore, articulated a reason for requiring standing at the inception of patent infringement and trademark infringement claims. See id.

St. Bernard Parish Gov't v. United States, 142 Fed. Cl. at 528-29 (alteration in original). This court also stated that defendant "has not put forth any justification for extending the requirements articulated for standing in a patent infringement case to a non-patent case such as the above-captioned case." Id. at 530.

The court then considered whether plaintiff's April 28, 2017 filing labeled "'FIRST SUPPLEMENTAL AND AMENDING COMPLAINT'" was, under RCFC 15 (2018), an amended complaint or a supplemental complaint and whether a court may examine a supplemental complaint when determining standing. See St. Bernard Parish Gov't v. United States, 142 Fed. Cl. at 530-532 (capitalization in original). The court stated that the "United States Court of Appeals for the Federal Circuit has permitted parties to remedy jurisdictional defects with supplemental complaints in other situations not involving standing in a patent case." Id. at 530. In the April 4, 2019 Opinion, the court noted that, in Prasco, LLC v. Medicis Pharmaceutical Corp., the United States Court of Appeals for the Federal Circuit stated:

> Because the Amended Complaint included allegations regarding events that happened after the first complaint, technically it is a supplemental complaint, not an "amended complaint." See Fed.R.Civ.P. [Federal Rule of Civil Procedure] 15(d)[1] (allowing a party to "serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented"); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1504, at 184 ("Parties and courts occasionally confuse supplemental pleadings with amended pleadings and mislabeling is common. However, these misnomers are not of any significance and do not prevent the court from considering a motion to amend or supplement under the proper portion of Rule 15.").

> Rule 15(d) expressly allows for supplemental complaints to "cure" defects in the initial complaint. Fed.R.Civ.P. 15(d) ("Permission [to serve a supplemental pleading] may be granted even though the original pleading

---

[1] The language in Rule 15(d) (2018) of the Federal Rules of Civil Procedure is identical to the language in RCFC 15(d) (2018).

is defective in its statement of a claim for relief or defense."). The Supreme Court has confirmed that supplemental pleadings can be used to cure subject matter jurisdiction deficiencies. See Mathews v. Diaz, 426 U.S. 67, 75, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (explaining that there was "little difficulty" in a party's failure to file an application that was a "nonwaivable condition of jurisdiction" until after he was joined in the action because "[a] supplemental complaint in the District Court would have eliminated this jurisdictional issue"); see also 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1505, at 191 (explaining that, prior to the 1963 amendment to Rule 15(d), some courts had not allowed curing of defects through supplemental complaints, but that the addition of the second sentence to 15(d) in 1963 removed "any uncertainty on the point").

Thus, while "[l]ater events may not create jurisdiction where none existed at the time of filing," the proper focus in determining jurisdiction are "the facts existing at the time the complaint *under consideration* was filed." GAF Bldg. Materials Corp. v. Elk Corp., 90 F.3d 479, 483 (Fed. Cir. 1996) (emphasis added) (quoting Arrowhead Indus. Water, Inc. v. Ecolochem Inc., 846 F.2d 731, 734 n.2 (Fed. Cir. 1988)); see also Rockwell Int'l Corp. v. United States, 549 U.S. 457, 127 S.Ct. 1397, 1409, 167 L.Ed.2d 190 (2007) ("[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction."); Connectu LLC v. Zuckerberg, 522 F.3d 82 (1st Cir. 2008). As the district court accepted Prasco's Amended Complaint, it is the Amended Complaint that is currently under consideration, and it is the facts alleged in this complaint that form the basis for our review.

Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1337 (Fed. Cir. 2008) (alterations, except for the first and second alterations, and emphasis in original). In a footnote, the Prasco court stated that "[i]t is Rule 15(d), not Rule 15(a), that governs supplemental complaints, even if the complaint is mislabeled as an amended complaint." Id. at 1337 n.5.

In the court's April 4, 2019 Opinion, the court also discussed the United States Court of Appeals for the Ninth Circuit's decision in Northstar Financial Advisors Inc. v. Schwab Investments, 779 F.3d 1036, 1043 (9th Cir.), amended on denial of reh'g and reh'g en banc (9th Cir. 2015). In the court's April 4, 2019 Opinion, the court stated:

In Northstar Financial Advisors Inc. v. Schwab Investments, in an appeal from the United States District Court for the Northern District of California, the United States Court of Appeals for the Ninth Circuit considered whether standing could be established after the original complaint was filed. See Northstar Fin. Advisors Inc. v. Schwab Invs., 779 F.3d 1036, 1043 (9th Cir.), amended on denial of reh'g and reh'g en banc (9th Cir. 2015). The plaintiff, Northstar Financial Advisors, Inc. (Northstar), filed a class action complaint

5

on behalf of a Schwab Total Bond Market Fund (the Fund). See id. At the time Northstar filed its complaint, Northstar did not own any shares in the Fund. See id. The United States Court of Appeals for the Ninth Circuit stated that the District Court judge "dismissed Northstar's complaint for lack of standing with a suggestion that this defect could be cured by filing an amended complaint." Id. (emphasis in original) (citation omitted).

Subsequently, Northstar obtained an assignment of a claim from a client-shareholder of the Fund and filed an "amended complaint," which the United States District Court for the Northern District of California treated as a supplemental complaint. See id. The United States Court of Appeals for the Ninth Circuit stated:

> Rule 15(d) permits a supplemental pleading to correct a defective complaint and circumvents "the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief." Wright, Miller, & Kane, Federal Practice and Procedure: Civil 3d § 1505, pgs. 262-63. Moreover, "[e]ven though [Rule 15(d) ] [sic] is phrased in terms of correcting a deficient statement of 'claim' or a 'defense,' a lack of subject-matter jurisdiction should be treated like any other defect for purposes of defining the proper scope of supplemental pleading." Id. at § 1507, pg. 273.

Northstar Fin. Advisors Inc. v. Schwab Invs., 779 F.3d at 1044 (first and second alteration in original).

St. Bernard Par. Gov't v. United States, 142 Fed. Cl. at 532.

In Northstar Financial Advisors Inc., the United States Court of Appeals for the Ninth Circuit stated:

> [T]he district court judge to whom the case had been reassigned (Lucy Koh, *J.*) declined to order the dismissal of the complaint because to do so would have "elevate[d] form over substance" and thus she treated the prior order as granting plaintiff leave to file a supplemental pleading under Rule 15(d) instead of an amended complaint pursuant to Rule 15(a). Northstar Fin. Advisors, Inc. v. Schwab Invs., 781 F. Supp. 2d 926, 932-33 (N.D.Cal.2011). In so doing, she observed that, "[a]lthough there is no published Ninth Circuit authority on this point, courts in other circuits have found that parties may cure standing deficiencies through supplemental pleadings." *Id.* at 933 (citing, *inter alia,* Travelers Ins. Co. v. 633 Third Assoc., 973 F.2d 82, 87-88 (2d Cir. 1992)). We review this ruling *de novo,* Renee v. Duncan, 686 F.3d 1002, 1010 (9th Cir. 2012), and we agree with Judge Koh's application of Fed.R.Civ.P. 15(d).

6

Northstar Fin. Advisors Inc. v. Schwab Investments, 779 F.3d at 1043-44 (emphasis and alterations in original). The United States Court of Appeals for the Ninth Circuit further stated that "we agree that Judge Koh did not abuse her discretion in permitting Northstar to file a supplemental pleading" and determined that Northstar had standing based on the allegations in its supplemental complaint. Id. at 1048.

Moreover, in the court's April 4, 2019 Opinion, the court also stated:

[O]ther courts have determined that the court should look to the complaint currently under consideration when determining jurisdictional standing. See G&E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC, 168 F. Supp. 3d 147, 160 (D.D.C.) ("[S]tanding may be assessed by the timing of the filing of the operative complaint in an action—whether the original complaint or a supplemental or amended complaint."), recons. denied, 201 F. Supp. 3d 50 (D.D.C. 2016); see also Travelers Ins. Co. v. 633 Third Assocs., 973 F.2d 82, 88 (2d Cir. 1992) (permitting a plaintiff to file a supplemental complaint and stating that "[i]f the complaint as amended alleges sufficient facts to support the requisite injury . . . plaintiff will have established standing to sue"); Perry v. Vill. of Arlington Heights, 180 F.R.D. 334, 337 (N.D. Ill. 1998) ("Among other things, a supplemental complaint may correct deficiencies such as lack of standing." (citing West v. Sullivan, 1990 WL 107862, at *3 (E.D. Pa. July 26, 1990))), aff'd, 186 F.3d 826 (7th Cir. 1999).

St. Bernard Par. Gov't v. United States, 142 Fed. Cl. at 532 (second and third alterations and omission in original).

Regarding plaintiff's April 28, 2017 filing labeled "FIRST SUPPLEMENTAL AND AMENDING COMPLAINT," this court stated:

In the above-captioned case currently under consideration, on September 25, 2015, plaintiff St. Bernard Parish filed its initial complaint, in which plaintiff stated that Ms. Pizani's and Ms. Juan's lawsuit was pending before the Louisiana State Trial court. On April 28, 2017, plaintiff filed a "MOTION FOR LEAVE TO FILE FIRST SUPPLEMENTAL AND AMENDING COMPLAINT" pursuant to RCFC 15, which the court granted, and filed its "FIRST SUPPLEMENTAL AND AMENDING COMPLAINT." (capitalization in original). In plaintiff's filing identified as its First Supplemental and Amending Complaint, plaintiff stated that the Louisiana State Trial court had issued a judgment against plaintiff in December 2016 and an amended judgment against plaintiff in January 2017, both of which occurred after plaintiff had filed its original complaint in this court on September 25, 2015. Although plaintiff did not indicate under which subsection of RCFC 15 plaintiff was filing its April 28, 2017 submission, because plaintiff labeled its April 28, 2017 filing as a "FIRST SUPPLEMENTAL AND AMENDING COMPLAINT" and because the filing set out a "transaction, occurrence, or

7

> event that happened after the date of the pleading to be supplemented," plaintiff's April 28, 2017 filing will be treated by this court as a supplemental complaint under RCFC 15(d). (capitalization in original).

St. Bernard Parish Gov't v. United States, 142 Fed. Cl. at 532-33 (footnote omitted). Throughout the court's April 4, 2019 Opinion, the court consistently referred to plaintiff's April 28, 2017 filing labeled "FIRST SUPPLEMENTAL AND AMENDING COMPLAINT" as a supplemental complaint. Notwithstanding the court's explicit finding concerning the categorization of plaintiff's April 28, 2017 supplemental complaint, defendant's May 2, 2019 motion for reconsideration and May 24, 2019 reply in support thereof refer to plaintiff's April 28, 2017 filing as an "amended complaint," without arguing that the court should reconsider its determination that plaintiff's April 28, 2017 filing is a supplemental complaint under RCFC 15(d).

Regarding the allegations in plaintiff's supplemental complaint, in its April 4, 2019 Opinion, the court stated:

> In plaintiff's supplemental complaint in this court, plaintiff states that the Louisiana State Trial court entered judgment and entered an amended judgment against plaintiff in favor of Ms. Juan and Ms. Pizani. Defendant, however, asserts that, under the terms of the January 20, 2017 Joint and Reciprocal Agreement,[2] Ms. Juan and Ms. Pizani cannot enforce the December 20, 2016 judgment and January 18, 2017 amended judgment against St. Bernard Parish even if St. Bernard Parish is "unsuccessful" in the above-captioned case. According to defendant, in the Joint and Reciprocal Agreement, Ms. Juan and Ms. Pizani "agreed that they would take action against St. Bernard if and only if 'St. Bernard collects funds from the United States in payment of the Judgement and fails to pay the funds to Plaintiffs within 60 days of receipt.'"

St. Bernard Par. Gov't v. United States, 142 Fed. Cl. at 533. Before this court, plaintiff, however, argued that St. Bernard Parish "would remain liable to Ms. Juan and Ms. Pizani for the December 20, 2016 judgment and January 18, 2017 amended judgment 'in the event SBPG was unsuccessful in recovering the compensation owed by the United States.'" Id. After carefully reviewing the terms of the Joint and Reciprocal Agreement, as

---

[2] As stated in the court's April 4, 2018 Opinion, St. Bernard Parish and Avis Melerine Juan and Alfreda Melerine Pizani, who appear to be related, entered into a Joint and Reciprocal Agreement involving the December 20, 2016 judgment and January 18, 2017 amended judgment issued by the Louisiana State Trial Court against St. Bernard Parish. See St. Bernard Par. Gov't v. United States, 142 Fed. Cl. at 516-17. St. Bernard Parish, Ms. Juan, and Ms. Pizani also entered into an August 15, 2018 Addendum to the Joint and Reciprocal Agreement. Id. at 517. The Louisiana State Trial Court's December 20, 2016 judgment and January 18, 2017 judgment were issued in favor Ms. Juan and Ms. Pizani against St. Bernard Parish. See id. at 514-15. Ms. Juan and Ms. Pizani owned the land at issue in this case on which borrow material was excavated from in 2005 and 2006. Id.

well as the Addendum to the Joint and Reciprocal Agreement, see id. at 533-39, the court determined that plaintiff had standing, stating:

> Regarding plaintiff's standing in the above-captioned case, both counsel of record for plaintiff and counsel of record for defendant estimated the amount of the two judgments entered by the Louisiana State Trial court against St. Bernard Parish to be approximately $4,500,000.00 as of the date of the oral argument, with interest continuing to accrue thereafter. Under the terms of the Joint and Reciprocal Agreement, with the explanation of what originally was intended in the Joint and Reciprocal Agreement in the Addendum, St. Bernard Parish, Ms. Juan, and Ms. Pizani made clear that they may enforce the judgments against St. Bernard Parish if St. Bernard Parish is unsuccessful in the above-captioned case in this court. The judgments issued by the Louisiana State Trial court against St. Bernard Parish are based on defendant's alleged breach of the Amended Cooperation Agreement, as borrow material from Ms. Juan's and Ms. Pizani's land was removed in connection with performance under the Amended Cooperation Agreement. A decision favorable to plaintiff could, if successful, address the injury suffered by plaintiff, as plaintiff would no longer be liable to Ms. Juan and Ms. Pizani under the Joint and Reciprocal Agreement, provided plaintiff pays the funds to Ms. Juan and Ms. Pizani within sixty days of receipt of funds. Plaintiff has established an injury potentially traceable to defendant's alleged conduct that could be redressed with a favorable decision by this court and, therefore, has met its burden to establish standing in the above-captioned case.

Id. at 539.

In defendant's May 2, 2019 motion for reconsideration, defendant argues that the court should reconsider its standing decision and now dismiss plaintiff's supplemental complaint "without prejudice" because:

> [T]wo points would appear to constitute "clear legal error": first, considering events occurring after the filing of the original complaint in determining whether St. Bernard has standing to bring this action; and second, holding that St. Bernard suffered an injury in fact as a result of the Louisiana state court judgment, even though that judgment had not been rendered when this action was commenced, had not been recorded when plaintiff amended its complaint, and has not been executed or paid to date.

(emphasis omitted). Defendant argues that "[d]efects of standing may not be cured by supplementing the original complaint with allegations of post-filing events."[3] On May 16,

---

[3] In an October 12, 2015 status report filed by defendant in the above-captioned case, defendant "suggested that the interests of judicial economy favored the Court staying the present action pending the resolution of a Federal condemnation proceeding currently

2019, plaintiff filed a response to defendant's motion for reconsideration, in which plaintiff argues that "[d]efendant's motion simply rehashes the same argument this Court previously rejected, as Defendant cites no change in the law since the Court's ruling, no discovery of previously unavailable evidence, and no showing that reconsideration is necessary to prevent manifest injustice." Plaintiff argues that the court should deny defendant's motion for reconsideration because "[i]t is clear, then, that under the legal precedent of this circuit, SBPG [St. Bernard Parish Government] possesses standing by virtue of its September 25, 2015 initial complaint and its April 28, 2017 supplemental complaint."

## DISCUSSION

The rule at RCFC 59(a)(1) states:

The court may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues—and to any party—as follows:

> (A) for any reason for which a new trial has heretofore been granted in an action at law in federal court;
>
> (B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or
>
> (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.

RCFC 59(a)(1). "RCFC 59 addresses reconsideration of both final judgments and interlocutory matters." Grand Acadian, Inc. v. United States, 93 Fed. Cl. 637, 640 n.1 (2010) (citing Fla. Power & Light Co. v. United States, 66 Fed. Cl. 93 (2005); and RCFC 59 advisory committee's notes to the 2002 revision).

The standards for reconsideration under RCFC 59(a) of interlocutory decisions have been described by judges of this court as "less 'rigorous' than those, for example, applicable to final judgments under RCFC 59(e)." Martin v. United States, 101 Fed. Cl.

---

being litigated in the Federal district court." Also, as noted in the court's October 14, 2015 Order, the court held a conference with the parties in the above-captioned case on October 14, 2015, less than three weeks after the above-captioned case was filed on September 25, 2015. In the court's October 14, 2015 Order, the court stated that, "[a]t the status conference, the parties in the above captioned case requested that the above captioned case be stayed pending resolution of certain related cases in Louisiana state court and the United States District Court for the Eastern District of Louisiana." The court also stated, "at the request of the parties, the above captioned case is **STAYED**." (emphasis in original). On September 15, 2017, the court issued an Order lifting the stay of the above-captioned case.

664, 670-71 (2011) (quoting Wolfchild v. United States, 68 Fed. Cl. 779, 784 (2005)), aff'd sub nom. Fournier v. United States, No. 2012-5056, 2012 WL 6839784 (Fed. Cir. Nov. 27, 2012), cert. denied, 569 U.S. 958, reh'g denied, 570 U.S. 936 (2013); see also Haggart v. United States, 133 Fed. Cl. 568, 573 (2017) (citation omitted). Judges of the United States Court of Federal have stated that the "grounds" on which a court may grant a motion for reconsideration of an interlocutory decision "include the discovery of new or different material evidence not presented in an earlier decision, an intervening change in controlling legal authority, or when a prior decision is clearly incorrect and would work a manifest injustice." Martin v. United States, 101 Fed. Cl. at 670 (citing Cobell v. Norton, 224 F.R.D. 266, 271 (D.D.C. 2004)); see also Petro-Hunt, L.L.C. v. United States, 108 Fed. Cl. 398, 399 (2013) (stating that RCFC 59(a) and RCFC 54(b) "permit the court to depart from a prior ruling when, *inter alia*, there is 'an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice'" (quoting Intergraph Corp. v. Intel Corp., 253 F.3d 695, 698 (Fed. Cir. 2001))).[4]

Reconsideration of an interlocutory decision, however, is not intended to give a disappointed litigant an additional chance to litigate an issue. See L-3 Commc'ns Integrated Sys., L.P. v. United States, 98 Fed. Cl. 45, 49 (2011) (quoting Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. 568, 572 (2009)); see also Haggart v. United States, 133 Fed. Cl. at 573 (quoting Martin v. United States, 101 Fed. Cl. at 671). "Nor is it availing, under the guise of reconsideration, to raise an issue for the first time that was available to be litigated earlier in the case." Farmers Co-op Co. v. United States, 100 Fed. Cl. 579, 581-82 (2011) (citing Matthews v. United States, 73 Fed. Cl. 524, 525 (2006)); see also L-3 Commc'ns Integrated Sys., L.P. v. United States, 98 Fed. Cl. at 49 (stating that when "litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again" (internal quotation marks and citation omitted)). "The determination of whether to grant a motion for reconsideration generally falls within the discretion of the court." Haggart v. United States, 133 Fed. Cl. at 573 (citing Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir.), reh'g denied (Fed. Cir. 1990)).

In its motion for reconsideration, defendant argues that the court committed "clear legal error" by "considering events occurring after the filing of the original [September 25, 2015] complaint in determining whether St. Bernard has standing to bring this action." In defendant's motion to dismiss decided in the court's April 4, 2019 Opinion, defendant argued that "[s]tanding is determined as of the commencement of suit. Therefore, the lack

---

[4] In defendant's motion for reconsideration, defendant argues that reconsideration should be granted when there is a "'a need to correct clear factual or legal error or prevent manifest injustice.'" See Biery v. United States, 818 F.3d 704, 711 (Fed. Cir.) (emphasis added) (quoting Young v. United States, 94 Fed. Cl. 671, 674 (2010)), cert. denied, 137 S. Ct. 389 (2016). Defendant also argues, "even if manifest injustice were required for reconsideration, that standard still would be satisfied because '[m]anifest injustice is commonly a manifest error of law or mistake of fact.'" (alteration in original) (quoting CANVS Corp. v. United States, 116 Fed. Cl. 294, 300 (2014)).

11

of a cognizable injury is a defect in standing that cannot be cured after the inception of the lawsuit." (internal quotation marks, citations, and brackets omitted). At the June 6, 2019 oral argument on defendant's motion to dismiss, the court asked counsel of record for defendant whether the court could review the allegations in plaintiff's April 28, 2017 supplemental complaint when analyzing standing, and defendant responded that "the original complaint, the commencement of this action, is the relevant trigger under the Federal Circuit precedent." In his motion for reconsideration, defendant's attorney cites to many of the cases he previously cited in his pre-decision motion to dismiss and reply in support thereof and repeats arguments already considered and addressed by the court in its April 4, 2019 Opinion. Defendant's motion for reconsideration also cites to Canadian Lumber Trade Alliance v. United States, 517 F.3d 1319 (Fed. Cir. 2008), and Reeves v. Shinseki, 682 F.3d 988 (Fed. Cir. 2012), neither of which involved a supplemental complaint under RCFC 15(d).

Defendant's motion for reconsideration argues that Northstar Financial Advisors Inc. v. Schwab Investments, 779 F.3d 1036, does not permit consideration of allegations in a supplemental complaint because "the Ninth Circuit is 'bound by decisions of prior panels.'" (quoting Miranda v. Selig, 860 F.3d 1237, 1243 (9th Cir. 2017)). In Northstar Financial Advisors Inc., a case discussed in the court's April 4, 2019 Opinion, the United States Court of Appeals for the Ninth Circuit "agree[d]" with the District Court's use of Rule 15(d) to allow Northstar to "cure" the standing defect in its original complaint. See Northstar Fin. Advisors Inc. v. Schwab Invs., 779 F.3d at 1044. The United States Court of Appeals for the Ninth Circuit also found that Northstar had standing based on its supplemental complaint filed in that case. Id. at 1048. Defendant now cites to Morongo Band of Mission Indians v. California State Board of Equalization, 858 F.2d 1376 (9th Cir. 1988), cert. denied, 488 U.S. 1006 (1989), and Righthaven LLC v. Hoehn, 716 F.3d 1166 (9th Cir. 2013), to argue that the court may not consider allegations in plaintiff's supplemental complaint. In Northstar Financial Advisors Inc., the United States Court of Appeals for the Ninth Circuit addressed both Morongo Band of Mission Indians and Righthaven LLC, cited by defendant in its motion for reconsideration, stating:

> Our dissenting colleague relies on Morongo Band of Mission Indians v. California State Board of Equalization, 858 F.2d 1376 (9th Cir.1988), for the proposition that "where the district court does not have subject matter jurisdiction over a matter at the time of filing, subsequent events do not confer subject matter jurisdiction on the district court." Dissent at 1068. We find this argument inapposite because, unlike the present case, Morongo did not involve a supplemental pleading, much less one with allegations of events that occurred after the commencement of the action.
>
> While Morongo does contain the broad statement that "subject matter jurisdiction must exist as of the time the action is commenced" and that a lack of subject-matter jurisdiction at the outset cannot be cured subsequently, it is now clear, if it was not then, that this rule is more nuanced than the inflexibility suggested by its language—both as it relates to curing jurisdictional defects through supplemental pleadings, see, e.g., Mathews

12

[v. Diaz], 426 U.S. 67, 96 S.Ct. 1883, and other circumstances in which defects in subject-matter jurisdiction were cured by the substitution, addition, or elimination of a party, see, e.g.[,] Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); Mullaney v. Anderson, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952); California Credit Union League v. City of Anaheim, 190 F.3d 997, 1000 (9th Cir.1999). Nevertheless, we need not belabor this issue because, in order to decide this case, it is enough to say that the rule as stated in Morongo does not extend to supplemental pleadings filed pursuant to Fed.R.Civ.P. 15(d).

The same is true of Righthaven LLC v. Hoehn, 716 F.3d 1166 (9th Cir.2013), which the dissent relies on for the "general principle that 'jurisdiction is based on facts that exist at the time of filing.'" Dissent at 1068. Of course, a general principle, which Righthaven observed was subject to at least a few exceptions, is significantly different from the hard and fast rule that the language in Morongo suggested. Indeed, Righthaven acknowledged the possibility of additional exceptions and left open the question of whether "permitting standing based on a property interest acquired after filing" should be added to the list of exceptions. Righthaven, 716 F.3d at 1171 ("We need not decide whether the circumstances of this case call for a new exception to the general rule, however, because Righthaven lacked standing either way.").

Northstar Fin. Advisors Inc. v. Schwab Invs., 779 F.3d at 1046. Moreover, in an unpublished Order, the United States Court of Appeals for the Ninth Circuit stated: "In Northstar, we held that a supplemental pleading under Federal Rule of Civil Procedure 15(d), based on facts that occurred after the filing of the original complaint, could cure standing deficiencies that existed at the time of the original complaint." In re Schugg, 688 F. App'x 477, 479 (9th Cir. 2017).

Defendant, however, argues that Northstar Financial Advisors Inc. "is of no moment" because Northstar Financial Advisors Inc. "arose in the unique context of a post-complaint assignment from a party that clearly had standing to bring a shareholder class action." (internal quotation marks and citation omitted omitted). Although Northstar Financial Advisors Inc. did involve the assignment of a claim to Northstar, the United States Court of Appeals for the Ninth Circuit did not indicate that its decision to look to the supplemental complaint to determine standing, rather than the original complaint, was limited to situations involving assignments of claims. Moreover, recently, the United States Court of Appeals for the District of Columbia Circuit stated that "we hold that a plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint." Scahill v. Dist. of Columbia, 909 F.3d 1177, 1184 (D.C. Cir. 2018). Scahill did not involve the post-complaint assignment of a claim; rather, Scahill found standing based on "the imposition of the $4,000 fine nine months after" the original complaint had been filed in the United States District Court for the District of Columbia. See id.

13

The court in Scahill also stated that "[n]either the Supreme Court nor this court has decided whether the lack of Article III standing at the outset of litigation is determinative of the court's jurisdiction because events occurring subsequent to the filing of the original complaint cannot cure that deficiency." Id. at 1182. The United States Court of Appeals for the District of Columbia Circuit explained:

> More instructive is the Supreme Court's precedent where jurisdiction was determined by looking beyond the original complaint. In Mathews v. Diaz, 426 U.S. 67, 75, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), a Medicare applicant did not file his Part B application until after he was joined as a plaintiff in an amended complaint. Although 42 U.S.C. § 405(g) made filing an application a "nonwaivable condition of jurisdiction," the Supreme Court held that condition was met. The Court stated it had "little difficulty" in holding that the district court had jurisdiction over the plaintiff's constitutional claim. Id. Citing Federal Rule of Civil Procedure 15(d), the Court stated that "[a] supplemental complaint in the District Court would have eliminated this jurisdictional issue." Id. Likewise, in Rockwell International Corp. v. United States, 549 U.S. 457, 460, 127 S.Ct. 1397, 167 L.Ed.2d 190 (2007), the Court made clear that the original complaint was not dispositive of jurisdiction. There, the Court stated that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Id. at 473-74, 127 S.Ct. 1397 (citations omitted). In determining jurisdiction, the Court looked to the final pretrial order, which "superseded all prior pleadings and 'controll[ed] the subsequent course of the action,' Fed. Rule Civ. Proc. 16(c)." Id. at 474, 127 S.Ct. 1397. The Court observed that it did not matter that the pleadings were not formally amended. Id. (citing FED. R. CIV. P. 15(b) and 16; other citations omitted).
>
> A number of the circuit courts of appeal have addressed whether events subsequent to the filing of the original complaint can cure a jurisdictional defect. Some courts have held that a plaintiff may cure a standing defect through a supplemental pleading alleging facts that arose after the original complaint was filed. See Northstar Fin. Advisors Inc. v. Schwab Investments, 779 F.3d 1036, 1044 (9th Cir. 2015); United States ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 6 (1st Cir. 2015); Daniels v. Arcade, L.P., 477 F. App'x 125, 131 (4th Cir. 2012); Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1337 (Fed. Cir. 2008); Travelers Ins. Co. v. 633 Third Assocs., 973 F.2d 82, 87-88 (2d Cir. 1992). Other courts have affirmed the dismissal of the original complaint for lack of jurisdiction even if subsequent events cured the standing deficiency, so that the plaintiff would have to file a new lawsuit to pursue the claims. See S. Utah Wilderness All. v. Palma, 707 F.3d 1143, 1153 (10th Cir. 2013); Pollack v. U.S. Dep't of Justice, 577 F.3d 736, 743 (7th Cir. 2009); Park v. Forest Serv.

of U.S., 205 F.3d 1034, 1037-38 (8th Cir. 2000).[5]

The circuit courts of appeal adopting the former approach have relied on the supplemental pleadings provision of Federal Rule of Civil Procedure 15(d), which provides such pleading may "set[ ] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," FED. R. CIV. P. 15(d). The Advisory Committee has explained that Rule 15(d) was amended in order to place broad discretion in the district court in order to avoid "needlessly remitt[ing] [plaintiffs] to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief." Id., advisory committee notes to 1963 amendment. Tracking this approach, the Ninth Circuit in Northstar Financial Advisors Inc., 779 F.3d at 1042, affirmed the district court's decision to allow Northstar to file an amended complaint as a supplemental pleading pursuant to Rule 15(d), id. at 1043-44, where it had filed a shareholder class action lawsuit against an investment trust before obtaining an assignment of claims allowing suit on the shareholders' behalf, id. at 1043. Permitting subsequent pleadings to correct jurisdictional defects "circumvents the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief." Id. at 1044 (internal quotation marks and citation omitted). Although Rule 15(d) refers to deficiencies "in stating a claim or defense," FED. R. CIV. P. 15(d), the court concluded there was no reason why a jurisdictional defect should be different, relying in part on the Supreme Court's discussion of amended pleadings in Mathews v. Diaz and

---

[5] The court notes that not all of the cases cited in the above paragraph by the United States Court of Appeals for the District of Columbia Circuit specifically analyze whether standing may be "cure[d]" by a supplemental complaint. Some of the cases cited by the United States Court of Appeals for the District of Columbia Circuit address whether a supplemental complaint may remedy defects in subject-matter jurisdiction. See U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 3, 6 (1st Cir. 2015) (stating that "[w]e conclude, as a matter of first impression in this court, that Federal Rule of Civil Procedure 15(d) is available to cure most kinds of defects in subject matter jurisdiction," including a "jurisdictional bar" related to the False Claims Act), cert. denied, 136 S.Ct. 2517 (2016); Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1333, 1337 (Fed. Cir. 2008) (stating that "[t]his is a patent case concerning the scope of our jurisdiction over declaratory judgment actions," and that, "[a]s the district court accepted Prasco's Amended Complaint, it is the Amended Complaint that is currently under consideration, and it is the facts alleged in this complaint that form the basis for our review"). The United States Court of Appeals for the Tenth Circuit's decision in Southern Utah Wilderness Alliance v. Palma, 707 F.3d 1143, 1151 (10th Cir. 2013), involved an amended complaint, not a supplemental complaint. See id. Neither Pollack v. United States Department of Justice, 577 F.3d 736, 743 (7th Cir. 2009), reh'g en banc denied, cert. denied, 559 U.S. 1006 (2010), nor Park v. Forest Service of United States, 205 F.3d 1034, 1037-38 (8th Cir. 2000), involved a supplemental complaint.

Rockwell International Corp. v. United States. See Northstar, 779 F.3d at 1044.

The government acknowledges the open jurisdictional question in this court and the Supreme Court and the circuit split.

Scahill v. Dist. of Columbia, 909 F.3d at 1182-84 (footnote omitted).

Regarding the case before it, the United States Court of Appeals for the District of Columbia Circuit further stated:

> [W]e hold that a plaintiff may cure a standing defect under Article III through an amended pleading alleging facts that arose after filing the original complaint. The alternative approach forces a plaintiff to go through the unnecessary hassle and expense of filing a new lawsuit when events subsequent to filing the original complaint have fixed the jurisdictional problem. The "reasonable notice" and "just terms" limitations in Rule 15(d) guard against undue expansion of a provision designed to eliminate "needless[ ] remitt[ing]" of a plaintiff. FED. R. CIV. P. 15 advisory committee notes to 1963 amendment.

Scahill v. Dist. of Columbia, 909 F.3d at 1184 (second and third alterations in original). Thus, as the court explained in its April 4, 2019 Opinion, other courts have permitted a plaintiff to cure a standing defect, if such a defect existed at the time the original complaint was filed, by filing a supplemental complaint alleging events occurring after the original complaint was filed.

In the above-captioned case, the court has considered the cases cited in defendant's motion for reconsideration and reply and has found defendant's counsel's arguments, albeit offered in over thirty pages of text, to be unavailing. Defendant has not cited to a decision of the United States Court of Appeals for the Federal Circuit or the the United States Court of Federal Claims stating that the court may not consider the allegations in a supplemental complaint under RCFC 15(d), as the court did in its April 4, 2019 Opinion when determining standing. The court's April 4, 2019 Opinion, as briefly summarized above in this Order, articulated a supported basis for examining the allegations in plaintiff's supplemental complaint in this case, and the court's decision to examine standing based on plaintiff's April 28, 2017 supplemental complaint does not constitute "clear legal error."

Defendant's motion for reconsideration also argues that the court's April 4, 2019 Opinion contains a "second" "clear legal error," namely that the Louisiana State Trial Court's judgments issued against St. Bernard Parish are not sufficient to provide plaintiff with standing in the above-captioned case. The United States Supreme Court has stated that, in order to establish standing, a plaintiff

> must show (1) it has suffered an "injury in fact" that is (a) concrete and

16

particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-561 (1992)). This court's April 4, 2019 Opinion stated that the Louisiana State Trial Court's judgments were approximated by both counsels at oral argument to total $4,500,000.00, with interest accruing thereon, and that the judgments may be enforced against St. Bernard Parish if St. Bernard Parish is unsuccessful in the above-captioned case. Even if St. Bernard Parish ultimately is successful in recovering monetary damages[6] from the United States in the above-captioned case, St. Bernard Parish would not be entitled to retain the damages because, under the terms of the Joint and Reciprocal Agreement (and the Addendum), the damages would be provided to Ms. Juan and Ms. Pizani as payment for the Louisiana State Trial Court's judgments issued against St. Bernard Parish. The Louisiana State Trial Court's judgments issued against plaintiff were alleged to have arisen out of a breach of the Amended Cooperation Agreement between the United States Army Corps of Engineers, St. Bernard Parish, and Lake Borgne Basin Levee District. A decision favorable to plaintiff in the above-captioned case could redress plaintiff's injury by potentially extinguishing plaintiff's liability for the Louisiana State Trial Court judgments. Thus, "[p]laintiff has established an injury potentially traceable to defendant's alleged conduct that could be redressed with a favorable decision by this court and, therefore, has met its burden to establish standing in the above-captioned case." St. Bernard Par. Gov't v. United States, 142 Fed. Cl. at 539. The court does not believe that the injury suffered by plaintiff is "speculative," as defendant asserts, or that the court's determination in its April 4, 2019 Opinion that plaintiff St. Bernard Parish has standing constitutes "clear legal error."

## CONCLUSION

Defendant's motion for reconsideration is **DENIED**. On or before **Thursday, June 27, 2019**, the parties shall submit a joint status report proposing future proceedings in the above-captioned case.

**IT IS SO ORDERED.**

s/Marian Blank Horn<br>
**MARIAN BLANK HORN**<br>
**Judge**

---

[6] The January 20, 2017 Joint and Reciprocal Agreement, however, states: "Nothing contained herein shall obligate St. Bernard to pay to Plaintiffs any sums awarded to St. Bernard and recovered from the United States which are solely and expressly attributable to attorney's fees incurred by St. Bernard's attorneys in representing St. Bernard Parish."